José Rodríguez, Plaintiff and Appellant, *v.* United States Fire Insurance Company, Defendant and Appellee.

No. 3374. Argued March 19, 1925.—Decided June 23, 1925.

1. INSURANCE—MERCHANDISE—FURNITURE.—Insurance against fire on "the stock of groceries in general" of a commercial establishment does not cover the furniture of said establishment.

2. ID.—ARBITRATOR—PROOF OF CLAIM—WAIVER.—A demand made by the insurance company upon the insured that an arbitrator be appointed to appraise the merchandise can not have the legal effect of a waiver of the presentation of proof of claim by the insured.

3. ID.—ACCOUNT BOOKS—INVENTORY—IRON SAFE CLAUSE.—A merchant who keeps only one book in which is entered the purchases, but not the sales, does not comply with the iron safe clause of the policy requiring the account books and inventory to be kept in an iron safe.

First District Court of San Juan, Charles E. Foote, J.   Judgment
for the defendant in an action on an insurance policy.   *Affirmed.*
*R. Martínez Nadal* and *R. A. Martínez* for the appellant.   *J. H.
Brown* and *Clemente Ruiz Nazario* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The plaintiff-appellant had taken insurance on the stock
of his commercial establishment with the defendant com-
pany in the sum of $4,000 for a period of one year.   On
April 15, 1922, a fire occurred in the said establishment of
the plaintiff and by reason of it this action was brought.

The policy issued by the defendant containing the terms
of the contract was made a part of the complaint, but does
not appear to have been included in the record of the case.
However, it may be deduced from the pleadings and the
evidence that, among other clauses, the policy contained
the following: 1st.—That the insured should give notice to
the company of any fire that had occurred.   2nd.—That
within fifteen days after the fire, unless an extension of
time should be granted, he should present to the company
a statement in detail of the losses and the exact value of
his stock at the time of the fire.   3rd.—The insured should
keep the account books and inventory in a fireproof safe
(iron safe clause), *i. e.,* he should keep such books safe
from the contingencies of a fire.   4th.—The insured should
show that the fire was purely accidental and without the
direct or indirect participation of the insured.   If the in-
sured should fail to comply with any of those require-
ments, or if he should include any false declarations in
his claim for damages (proof of claim), he would be de-
prived of all right to recover.

The plaintiff alleged that he suffered the following dam-
ages: By depreciation in the value of the damaged mer-
chandise and the total losses, $1,397.59; by depreciation in
the value of the furniture, $659.45, and half of the expenses
for storage and for the sale at auction of the damaged
goods, $116.99.

[1] The appellee denied that the furniture was covered by the policy, because it was not included in the words "the stock of groceries in general" used in the contract on that point.

As a question of law the furniture of an establishment is not understood to be included in the meaning of the word "groceries." 32 Cyc. 742. And it has been determined clearly that an insurance on the "stock" or "merchandise" of a commercial establishment refers only to the articles or objects intended to be sold, and not to those dedicated to the use of the establishment. *Kent* v. *London, Liverpool & Globe Ins. Co.*, 26 Ind. 294, 89 Am. Dec. 463; *Agricultural Ins. Co.* v. *Collins*, 175 S. W. 1120.

Hence, on this point the complaint is insufficient to sustain a cause of action.

[2] Another defense set up by the defendant is that the plaintiff did not present a statement of the losses (proof of claim), thus failing to comply with one of the conditions of the policy.

The appellant contends in his brief, however, that as the defendant demanded of the plaintiff the appointment of an arbitrator, compliance with that condition was waived. If, as held in the case of *Parga & Frontera* v. *Royal Insurance Co.*, 32 P.R.R. 73, provisions for arbitration in insurance policies are void in Porto Rico because of section 175 of Act No. 66 of July 16, 1921, any indication of the defendant in that sense could not have the legal effect of a waiver as regards the failure of the plaintiff to present his claim. At any rate, although there is a conflict of authorities with respect to whether or not the mere fact of entering into arbitration implies such waiver, the most rational and equitable doctrine seems to us to be that laid down by the Supreme Court of Massachusetts in the case of *Rockwell* v. *Hamburg-Bremen Fire Ins. Co.*, 212 Mass. 318, 98 N. E. 1086, as follows:

"A fire policy provided that in case of loss the insured must present a statement, sworn to and signed by him, setting forth the value of the property insured, his interest therein, and all other insurance thereon in detail, together with the purposes for which the insurance was carried and the manner in which the fire originated, and another stipulation provided for arbitration on failure of the parties to agree as to the loss. *Held* that, the insured having failed to submit the required statement, the act of the insurer in sending its special agent to ascertain the amount of the loss, and in proceeding to determine that by an arbitration and award, was not a waiver of the provision requiring the insured to submit the statement."

And the reasoning on which the doctrine was based was stated clearly in the opinion as follows:

"While the defendants might have waited for the sworn statement before attempting to settle the amount of loss, yet it is very important, especially where there is reason to believe or suspect that either through bad faith, mistake or honest prejudice the insured may exaggerate the amount of his loss, that the insurer should be promptly on the spot and begin an investigation. And the mere fact that the insurer does so appear and proceed to determine the loss and sign an agreement for arbitration like the one in this case is no evidence of a waiver of the requirement of the policy as to the sworn statement."

In the case before us the evidence tended to show that Hastrup, the insurance company's adjuster, wrote a letter to the plaintiff and enclosed a blank form for a statement of the losses in order to make the claim against the company appear in writing, and also demanded the appointment of an arbitrator to appraise the merchandise. The defendant received no answer and the plaintiff admitted in his testimony that he did not comply with that requirement. This was one of the grounds on which the trial court properly dismissed the complaint.

[3] The trial court declared also that the plaintiff did not comply with the clause that imposed upon him the obligation of keeping the account books and inventory in a

fireproof safe (iron-safe clause), and its conclusion, which likewise we consider a correct expression of the facts proved, is as follows:

"That the plaintiff did not comply with the clause of the insurance contract on 'account books and inventory in fireproof safe' (iron-safe clause), and this is deduced from testimony of the plaintiff and his employees. In the establishment only one book was kept, and this in such an irregular manner and so carelessly that it could not be called in any way an 'account book' for the purpose of complying with the said clause of the policy."

The appellant insists that it was not necessary to have account books kept by a bookkeeper, especially when the policy did not determine the kind of books that should be kept by the plaintiff, and bases his contention on the following citation:

"A covenant 'to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business,' should not be interpreted to mean such books as would be kept by an expert bookkeeper, but it is satisfied if the books kept were such as would fairly show, to a man of ordinary intelligence, 'all purchases and sales, both for cash and credit.' The provision imposes on the insured the duty to preserve in intelligible form, in one or more books of his own choice, written evidence of his purchases, of his sales, and of his shipments." 14 R.C.L. 1141.

Nothing could be more reasonable and just than the doctrine cited, but in conformity with the facts of this case the suavity of that doctrine does not aid the appellant. The book that he kept could give no exact idea of the stock of goods at the time of the fire. In it the purchases were entered, but not the sales, and these entries showed neither the kind nor the amount of the articles purchased. It was attempted to prove some entries, but all of the invoices were not presented and those produced referred to the last months and not to former dates. If to this we add that there was evidence tending to show that the fire was not

merely casual, we are even more inclined from all of the circumstances of this case to sustain the judgment of the lower court.

For the reasons stated the judgment of the lower court is affirmed.